**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) DANNY PAXTON, as Parent and Next Friend of A.P., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| (1) INDEPENDENT SCHOOL DISTRICT NO. 7 OF LEFLORE COUNTY a/k/a POCOLA PUBLIC SCHOOLS; | ) ) ) | |
| (2) JASON BRITTAIN, individually; | ) | Case No. 6:23-cv-212-JAR |
| (3) CLINT BEESLEY, individually; | ) | |
| (4) SHAY TOMPKINS, individually; | ) | |
| (5) ERIC TAYLOR, individually; | ) | |
| (6) OKLAHOMA DEP'T OF HUMAN SERVICES; | ) | |
| (7) CYNTHIA WILLIAMS, individually; | ) | |
| (8) CECELIA GRAY-ALSAY, individually; | ) | |
| (9) BRITTNEY BRINLEE, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Danny Paxton initiated this action on behalf of his minor child, A.P., in the District Court of LeFlore County, Oklahoma in May of 2023 against Independent School District No. 7 of Leflore County a/k/a Pocola Public Schools (the "School District"); Jason Brittain, as the superintendent of Pocola Public Schools ("Brittain"); Clint Beesley, as a principal at Pocola Public Schools ("Beesley"); Shay Tompkins, as an emergency-certified teacher at Pocola Public Schools ("Tompkins"); the Oklahoma Department of Human Services ("ODHS"); Cynthia Williams, as an employee of ODHS ("Williams"); Cecelia Gray-Alsay, as an employee of ODHS ("Gray-Alsay"); Brittney Brinlee, as an employee of ODHS ("Brinlee"); and Eric Taylor, as A.P.'s abuser ("Taylor"). The action was removed to this Court on June 26, 2023. All

1

parties consented to the undersigned judge on August 30, 2023, in accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. ("FRCP") 73(a). Plaintiff filed his second amended complaint ("Second Amended Complaint") on October 11, 2023. [Doc. 54].[1]

This matter comes now before the Court on the motion to dismiss of ODHS [Doc. 56]; the joint partial motion to dismiss [Doc. 57] of Brittain, Beesley, Tompkins (collectively, "ISD Defendants"), and the School District; the joint motion to dismiss of Williams and Gray-Alsay [Doc. 79]; and the motion to dismiss of Brinlee [Doc. 88]. Plaintiff filed his responses in opposition to the dismissal motions of ODHS [Doc. 65], the School District and ISD Defendants [Doc. 66], Williams and Gray-Alsay [Doc. 81], and Brinlee [Doc. 91]. Replies have been filed by the School District and ISD Defendants [Doc. 75], Williams and Gray-Alsay [Doc. 87], and Brinlee [Doc. 92].

## I.   PLAINTIFF'S ALLEGATIONS

While waiting for her bus at the end of the school day on September 15, 2021, A.P.[2] disclosed to defendant Tompkins that she experienced sexual abuse at the hands of her mother's boyfriend, defendant Taylor. Specifically, A.P. disclosed Taylor had "pulled down her panties" and that she feared the abuse at home would continue. [Doc. 54, ¶¶ 23-24]. "[S]chool district employees" nevertheless sent A.P. home without contacting either of her biological parents. [*Id*., ¶ 26 (emphasis omitted)]. Instead, Tompkins reported A.P.'s disclosure to her supervising principal, defendant Beesley, who then contacted a school counselor for guidance on mandatory reporting

---

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers provided by CM/ECF.

[2] At all times material to this litigation, A.P. was a student enrolled in Pocola Public Schools.

requirements. The school counselor, who was on personal leave at the time, advised Beesley to contact both the ODHS hotline and the Pocola Police Department – noting ODHS' historic unreliability in responding to reports submitted through its hotline. Beesley then contacted the School District superintendent, defendant Brittain, for further guidance on proper reporting procedures. Brittain advised Beesley that employees of the School District need only contact the ODHS hotline to submit the report at issue.[3] At the direction of Beesley, Tompkins then contacted the ODHS hotline to report, among other things, that Taylor instructed A.P. not to tell her mother that he was "pulling her pants down." [*Id.*, ¶ 36]. Tompkins also noted in the report that A.P. looked vulnerable, scared, or sad while disclosing her abuse.

ODHS received Tompkins' hotline report at approximately 3:52 p.m. on September 15, 2021. Defendant Brinlee completed an intake assessment and categorized the report as a "Priority Response II,"[4] selecting the days for initiation of a responsive ODHS investigation as "5." [*Id.*, ¶¶ 37, 40]. Defendant Gray-Alsay subsequently reviewed and approved the categorizations prepared by Brinlee, and the report was staffed with defendant Williams. Brinlee, Williams, and Gray-Alsay (collectively, "DHS Defendants") were all aware that A.P. rode the school bus home on September 15, where she resided with her mother and Taylor.

---

[3] 10A *Okla. Stat.* § 1-2-101(B)(2) requires, in pertinent part, that "[e]very school employee having reason to believe that a student under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter immediately to the Department of Human Services and local law enforcement." *See* [Doc. 54, ¶ 21].

[4] Pursuant to 10A *Okla. Stat.* § 1-2-105 and ODHS Administrative Code 340: 75-3-130(h), ODHS personnel were required to prioritize reports of abuse that indicate "the child is in present danger and at risk of serious harm or injury" as "Priority I." [Doc. 54, ¶ 46]. Per ODHS policy, reports categorized as Priority I require an immediate response on "the same day the report is received." [*Id.*].

The following day, or on September 16, 2021, A.P. disclosed to the school counselor that she again experienced sexual abuse at the hands of Taylor during the previous night. The school counselor immediately reported A.P.'s second disclosure to the ODHS hotline and the Pocola Police Department. Local authorities promptly caused the arrest of Taylor, who admitted to sexually abusing A.P. soon thereafter.

In his Second Amended Complaint, Plaintiff asserts the following causes of action against the moving defendants: federal claims under 42 U.S.C. § 1983 against the School District and ISD Defendants for violation of the Fourteenth Amendment to the United States Constitution (Count 1); federal claims under § 1983 against the School District, ISD Defendants, and DHS Defendants for a substantive violation of the Due Process Clause under the Fourteenth Amendment (Count 2); state law claims against the School District, ISD Defendants, and ODHS for violation of the Oklahoma Constitution (Count 3); state law claims against all moving defendants for negligent failure to train and enforce policies required under Oklahoma law (Count 4); state law claims against all moving defendants for negligent failure to protect (Count 5); state law claims against ISD Defendants for negligence *per se* based on an alleged failure to report (Count 6); and state law claims against ISD Defendants for intentional infliction of emotional distress ("IIED") (Count 8).

The School District, ISD Defendants, and DHS Defendants seek dismissal of Plaintiff's federal claims (Counts 1 and 2) based on the affirmative defense of qualified immunity pursuant to FRCP 12(b)(6). The School District, ISD Defendants, and ODHS seek dismissal of the Oklahoma Constitutional claim (Count 3) based on

the sovereign immunity afforded under the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 *Okla. Stat.* §§ 151 *et seq.*, for failure to state a claim under FRCP 12(b)(6). In addition, all moving defendants seek dismissal of Plaintiff's negligence claims (Counts 4, 5, and 6) based on the immunity provided by the GTCA and pursuant to FRCP 12(b)(6). Finally, ISD Defendants seek dismissal of Plaintiff's state law claim for IIED (Count 8) pursuant to FRCP 12(b)(6).

## II.   STANDARD ON A MOTION TO DISMISS

In considering a motion to dismiss under FRCP 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out a claim. Twombly, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007) (quotation omitted).

5

The *Twombly* plausibility standards are particularly important when, as here, a complaint alleges § 1983 claims. Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008). Setting forth specific factual allegations to support the elements of a § 1983 claim is particularly important because "state actors may only be held liable under § 1983 for their own acts." Id. at 1251. The Tenth Circuit has further stressed the importance of factual allegations in a § 1983 claim when qualified immunity is likely to be asserted as an affirmative defense. Id. at 1249. Although courts "apply the same standard in evaluating dismissal in qualified immunity cases as to dismissal generally," complaints in § 1983 cases against individual state actors "pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." Id. Therefore, it is particularly important in such circumstances for a plaintiff to make clear in his complaint "exactly *who* is alleged to have done *what* to *whom*" to "provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Id. at 1250 (emphasis in original).

Here, ISD Defendants and DHS Defendants seek dismissal of Plaintiff's § 1983 claims under FRCP 12(b)(6) based on qualified immunity, which is an affirmative defense that "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law," Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted); *see* Pahls v. Thomas, 718 F.3d 1210, 1227 (10th Cir. 2013) ("Qualified immunity is an immunity from suit rather than a mere defense to liability.") (citations omitted). Where an individual defendant seeks

dismissal of § 1983 claims under FRCP 12(b)(6) based on qualified immunity, there is "a presumption that the defendant is immune from suit." Smart v. City of Wichita, 951 F.3d 1161, 1168 (10th Cir. 2020) (quotation omitted).

To overcome this presumption, Plaintiff must show (1) the individual defendants' actions violated a constitutional right and (2) that right was clearly established at the time of the defendants' complained-of conduct. Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021). The first prong is judged "in the light most favorable to the party asserting the injury[.]" Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled on other grounds by* Pearson v. Callahan, 555 U.S. 223 (2009). As to the second prong, "[a] right is clearly established when, at the time of the alleged violation, 'the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Riggins v. Goodman, 572 F.3d 1101, 1111 (10th Cir. 2009) (citation omitted). "Courts have discretion to decide the order in which they address these two prongs." Roberts v. Winder, 16 F.4th 1367, 1374 (10th Cir. 2021). "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." Hesse v. Town of Jackson, Wyo., 541 F.3d 1240, 1244 (10th Cir. 2008); *see* Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'").

## III.  PLAINTIFF'S FEDERAL CLAIMS

As stated, the Second Amended Petition asserts two claims under § 1983. The Court addresses each federal cause of action in turn.

### A.   COUNT 1 | FOURTEENTH AMENDMENT VIOLATION

For Plaintiff's first federal cause of action, the Second Amended Complaint asserts that the School District and ISD Defendants failed to protect A.P. from a third party – i.e., defendant Taylor – in violation of an unspecified right belonging to A.P. under the Fourteenth Amendment. *See* [Doc. 54, ¶¶ 53-60].[5] Specifically, Plaintiff alleges that the "School District, Brittain, and/or Beesley" established a policy or custom "which failed to protect A.P." from Taylor, as evidenced by the following acts or omissions: failure to enforce and/or implement policies to prevent the harm inflicted on A.P.; failure to adequately train employees, such as Tompkins, to prevent the harm at issue; and failure to train and supervise employees. [*Id.* ¶ 58].

### 1.   Municipal Liability | The School District

When a § 1983 claim is asserted against a municipality, such as the School District, a plaintiff must allege facts showing: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998) (*citing* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). A municipality is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible[.]" Monell, 436 U.S. at 691. Importantly, "a municipality cannot be held liable solely because it employs a

---

[5] The Court notes Plaintiff has clarified that Count 1 is not an equal protection claim. *See* [Doc. 66 at 8].

tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id.

The Court agrees with the School District that even the most liberal construction of the Second Amended Complaint fails to allege that the School District maintained an "official policy" of deliberate indifference to student disclosures of sexual abuse. Acts that do not rise to the level of official policy may nonetheless create liability if they are sufficiently widespread and pervasive to constitute a "custom." *See* Starrett v. Wadley, 876 F.2d 808, 821 (10th Cir. 1989). However, Plaintiff's failure to allege the existence of similar discrimination as to other students seriously undermines his claim that the School District maintained a custom of failing to protect students, such as A.P. *See* City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (custom requires that the illegal practice be "widespread" – i.e., involving a "series of decisions").

Moreover, promptly reporting a student's disclosure of sexual abuse to one of the two agencies required under Oklahoma law does not by itself demonstrate a custom of the School District to be deliberately indifferent to student disclosures as a general matter. *See* Nordlinger v. Hahn, 505 U.S. 1, 26 (1992) (Thomas, J., concurring) ("A violation of state law does not by itself constitute a violation of the Federal Constitution."). While he has identified a mandatory reporting duty imposed by Oklahoma law, Plaintiff has not pointed to a duty imposed by the federal constitution requiring the School District and ISD Defendants to protect A.P. from the actions of a third party. And as further detailed herein, the Second Amended

9

Complaint gives no indication that any ISD Defendant possessed the "final policy-making authority" that the Supreme Court requires for purposes of establishing municipal liability under § 1983 on the basis of a decision specific to a particular situation. *See* Randle v. City of Aurora, 69 F.3d 441, 446-50 (10th Cir. 1995).

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim of municipal liability against the School District in accordance with FRCP 12(b)(6). The School District's request for dismissal of Count 1 is therefore granted.

### 1.    Individual Capacity Liability | ISD Defendants

By way of contrast to the municipality itself, an individual state actor may be held liable under § 1983 upon a showing of deliberate indifference to a known danger. Although conduct by a state actor is required to support a claim under § 1983 and the primary challenged conduct in this case is that of a boyfriend of a School District parent, the Tenth Circuit has found the possibility of state action where "a supervisor or employer participates in or consciously acquiesces in sexual harassment by an outside third party or by co-workers." Noland v. McAdoo, 39 F.3d 269, 271 (10th Cir. 1994) (*quoting* Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992)). "[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant" and not upon mere negligence. Woodward, 977 F.2d at 1399. To state a claim of "deliberate" violation of A.P.'s constitutional rights, Plaintiff must state facts sufficient to allege each ISD Defendant "actually knew of and acquiesced in" Taylor's unlawful behavior. Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995). This is precisely Plaintiff's claim – that Tompkins, Brittain, and

Beesley knew of Taylor's abuse of A.P. and acquiesced in that conduct by playing some part in reporting the abuse to ODHS, rather than ODHS and local authorities.

A § 1983 defendant sued in their individual capacity may be subject to personal liability and/or supervisory liability.[6] Personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). To establish personal liability, a plaintiff must show (1) the "personal involvement or participation" of each defendant in the alleged constitutional violation, Grimsley v. MacKay, 93 F.3d 676, 679 (10th Cir. 1996); (2) a causal connection between the acts of each defendant and the violation of a federal right, see Iqbal, 556 U.S. at 676; and (3) that each defendant acted with the state of mind required for the underlying constitutional violation. See Daniels v. Williams, 474 U.S. 327, 330 (1986). On the other hand, supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or caused to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010). To establish supervisory liability, a plaintiff must show: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained

---

[6] An individual, as opposed to an official, capacity suit "seeks to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). Here, the Court understands Plaintiff is seeking to impose § 1983 liability on ISD Defendants in their individual capacities because the Second Amended Complaint (1) asserts that ISD Defendants were "operating or working under color of law as agents of a governmental entity" [Doc. 54, ¶¶ 55, 63], and (2) seeks actual and punitive damages against ISD Defendants under both § 1983 claims. [Id. at 11, 13]. See Brandon v. Holt, 469 U.S. 464, 470 (1985) (holding that punitive damages are not available against individuals sued under § 1983 in their official capacities). The same is true for Plaintiff's § 1983 claim against DHS Defendants. See [Id. at 13 and ¶ 63].

of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Id.

### a.   *Defendant Tompkins*

The Court understands Plaintiff to be seeking to impose § 1983 liability on defendant Tompkins in her personal capacity, as the Second Amended Complaint contains no allegations that she held any supervisory authority as an emergency-certified teacher. To overcome her defense of qualified immunity, Plaintiff must allege facts showing Tompkins, through her personal participation in A.P.'s injury, violated A.P.'s clearly established constitutional right. The Court finds Plaintiff has accomplished neither in his Second Amended Complaint. His only explicit references to Tompkins' personal participation with respect to Count 1 include the following: A.P. disclosed Taylor's sexual abuse to Tompkins and expressed fear that the abuse would continue at home [Doc. 54, ¶¶ 22-24]; Tompkins reported the disclosure to principal Beesley [*Id.*, ¶ 28]; at the direction of Beesley (who was following superintendent Brittain's directions), Tompkins reported A.P.'s disclosure to the ODHS hotline [*Id.*, ¶ 34]; and Tompkins lacked training on how to properly respond to A.P.'s disclosure [*Id.*, ¶ 58(b)].[7] In sum, Plaintiff contends Tompkins is liable under § 1983 because she was not properly trained by her superiors and/or employer on mandatory reporting duties imposed under Oklahoma law.

---

[7] While the Second Amended Complaint asserts "A.P. was sent home by school district employees to the home where she disclosed that she had been abused" [Doc. 54, ¶ 26 (emphasis omitted)], these allegations are not sufficient to show how Tompkins "might be individually liable for deprivations of [A.P.'s] constitutional rights. *See* Robbins, 519 F.3d at 1250.

Even viewing the facts alleged as true, the Court finds that Plaintiff has failed to state a plausible § 1983 claim showing Tompkins, through her personal participation in A.P.'s injury, deprived A.P. of a constitutional right. Accordingly, Tompkins' request for dismissal of Plaintiff's first cause of action is granted for failure to state a claim in accordance with FRCP 12(b)(6). The Court further finds Tompkins is entitled to qualified immunity on Count 1, as Plaintiff has failed to allege that she violated a clearly established constitutional right.

### b.   *Defendants Brittain and Beesley*

To overcome the defense of qualified immunity asserted by both Brittain and Beesley, Plaintiff must allege facts showing that, through the promulgation of a policy or custom, Brittain and Beesley violated A.P.'s clearly established constitutional right. The Court understands Plaintiff is seeking to impose supervisory liability against Brittain and Beesley based on the following allegations: Brittain and/or Beesley established a policy or custom which failed to protect A.P. [Doc. 54, ¶ 58]; Brittain and/or Beesley failed to enforce and/or implement policies to prevent the harm inflicted on A.P. [*Id*., ¶ 58(a)]; and Brittain and/or Beesley failed to adequately train employees, specifically emergency certified teachers like Tompkins [*Id*., ¶ 58(b)]. The Court considers each theory in turn.

### i.   _Promulgation of Policies or Customs_

"A defendant supervisor's promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights" could "constitute[] sufficient personal involvement." <u>Dodds</u>, 614 F.3d at 1195. But Plaintiff's vague reference to a "policy, custom, usage, and practice," without further specification

about what those policies were or whether those policies could reasonably lead to the alleged injury, is insufficient to plead that Brittain and Beesley personally promulgated the alleged policy or custom. *See* <u>Farris v. Stepp</u>, No. CIV-20-02346, 2021 U.S. Dist. LEXIS 216297 at *31-32, 2021 WL 5200210 at *12 (D. Colo. Nov. 9, 2021) (finding the plaintiff had not alleged personal participation by a defendant-supervisor where the plaintiff did not identify the policies or procedures referenced in his complaint, allege or explain how those unidentified policies caused his constitutional injury, and did not allege that the defendant-supervisor knew or should have known the alleged policies or procedures would lead to the constitutional injury).

Even if Plaintiff had adequately identified a policy or custom promulgated by Brittain *and* Beesley, the Second Amended Complaint refers to actions of Brittain and Beesley collectively – which is not sufficient to show how each defendant "might be individually liable for deprivations of [A.P.'s] constitutional rights." <u>Robbins</u>, 519 F.3d at 1250. The need for individualized allegations is especially important where, as here, "each of the defendants had different powers and duties;" however, the Second Amended Complaint fails "to identify specific actions taken by particular defendants that could form the basis" of a constitutional violation. *See* <u>Brown v. Montoya</u>, 662 F.3d 1152, 1165 (10th Cir. 2011) (quotation omitted). For these reasons, even viewing the facts alleged as true, Plaintiff has failed to state plausible § 1983 claims against Brittain and Beesley in their supervisory capacities based on personal promulgation of a policy or custom.

### ii. _Failure to Promulgate and/or Enforce Appropriate Policies_

"A plaintiff could establish the defendant-supervisor's personal involvement by demonstrating his personal participation, his exercise of control or direction, . . . his failure to supervise, or his knowledge of the violation and acquiesce[nce] in its continuance." Dodds, 614 F.3d at 1195 (alteration in original) (citation omitted). But Plaintiff fails to plead facts supporting a causal connection between the failures of Brittain *and* Beesley to promulgate appropriate policies and the violation of A.P.'s constitutional rights. *See* Smith v. Allbaugh, 987 F.3d 905, 912 (10th Cir. 2021). The Second Amended Complaint notably asserts it was the duty of the School District, not Brittain and/or Beesley, "to implement policies and procedures pursuant to state law" [*Id.*, ¶ 56]. Plaintiff has not alleged that either Brittain or Beesley had policy making authority. Accordingly, the Court finds Plaintiff has failed to state plausible § 1983 claims against Brittain and Beesley in their supervisory capacities based on a failure to promulgate and/or enforce adequate policies.

### iii. _Failure to Train and/or Supervise_

Where the only alleged involvement of a supervisor is based on inadequate training, a plaintiff must show "essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." Currier v. Doran, 242 F.3d 905, 925 (10th Cir. 2001). Here, Plaintiff alleges that Brittain and/or Beesley failed to train and supervise the employees of the School District" and "failed to adequately train employees, specifically emergency certified teachers" such as Tompkins, "to prevent the harm to [A.P.]." [Doc. 54, ¶ 58]. The Second Amended Complaint, however, contains no allegations that Brittain or

Beesley had a duty to train School District employees on statutory reporting duties. And Plaintiff's insinuation that Brittain and Beesley were required to fulfill the School District's policymaking duties – which could presumably include a duty to provide subordinates with the relevant training – is impermissibly conclusive, without more. *See* [*Id.*, ¶¶ 56, 58]. Finally, Plaintiff fails to explain how Brittain and Beesley could be held liable for failing to educate their subordinates on reporting duties to which they themselves were allegedly ignorant.

Even viewing the facts alleged as true, the Court finds Plaintiff has not stated plausible § 1983 claims for supervisory liability against Brittain and Beesley. Accordingly, Brittain and Beesley's joint request for dismissal of Plaintiff's first cause of action is granted pursuant to FRCP 12(b)(6). The Court further finds Brittain and Beesley are entitled to qualified immunity on Count 1, as Plaintiff has failed to allege that they violated a clearly established constitutional right.

### A.   COUNT 2 | SUBSTANTIVE DUE PROCESS CLAIM UNDER § 1983

As for Plaintiff's second federal cause of action, the Second Amended Complaint asserts that the School District, ISD Defendants, and DHS Defendants deprived A.P. of an unspecified interest arising from her substantive due process rights under the Fourteenth Amendment. *See* [Doc. 54, ¶¶ 61-75]. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The clause was "intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression." DeShaney v. Winnebago Cnty. Dep't

of Social Servs., 489 U.S. 189, 196 (1989) (internal citation omitted). Notably, it is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." Id. at 195. The Supreme Court has "always been reluctant to expand the concept of substantive due process" and has "rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125-28 (1992).

To prevail on a substantive due process claim, a plaintiff "must demonstrate that the state acted in a manner that 'shock[s] the conscience.'" Uhlrig v. Harder, 64 F.3d 567, 571 (10th Cir. 1995) (internal citation omitted). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." Id. at 574. Instead, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Id. "[O]nly the most egregious official conduct" meets this standard. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Further, the guarantee of due process applies to "deliberate decisions of government officials to deprive a person of life, liberty, or property." Daniels, 474 U.S. at 331. This guarantee is "not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." Id. at 328 (emphasis in original). Generally, "state actors may only be held liable under § 1983 for their own acts, and not for the violent acts of third parties." Ruiz v. McDonnell, 299 F.3d 1173, 118 (10th Cir. 2002) (*citing* DeShaney, 489 U.S. at 197).

17

There are, however, two exceptions to the general rule: (1) the special relationship exception and (2) the danger creation exception.

### 1.   Danger Creation Exception

Here, Plaintiff contends liability by the School District and individual defendants under the danger creation exception. To invoke the danger-creation exception, a plaintiff must establish as a threshold matter (1) affirmative conduct on the part of the state actor in placing the plaintiff in danger, and (2) the plaintiff's injury resulted from private violence. *See* Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d 909, 920 (10th Cir. 2012). If these preconditions are met, a plaintiff must then satisfy all elements of a six-part test:

> (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience.

Ruiz, 299 F.3d at 1182-83.

The Court finds Plaintiff has satisfied neither precondition of the danger creation exception. According to Plaintiff, the School District and ISD Defendants "created a dangerous environment for A.P." by "recklessly" sending her home to the "obvious and known" danger posed by Taylor. [Doc. 54, ¶¶ 72-73, 75]. Other than alleging that the School District had a "duty to implement policies and procedures to protect its students, which included A.P.," [*Id.*, ¶ 64], Plaintiff has pointed to no conduct by the School District or any particular ISD Defendant that was affirmative conduct placing A.P. in danger. *See* Ruiz, 299 F.3d at 1183 ("[T]he conduct should be

directed at a discrete plaintiff[.]"). The Tenth Circuit has found that "because the act of establishing [] policies and customs does not pose a direct threat to any one particular individual but affects a broader populace, we deem such act too remote to establish the necessary causal link between the danger to the victim and the resulting harm." Gray, 672 F.3d at 926 (*citing* Ruiz, 299 F.3d at 1183). It concluded that "[d]efendants' adoption of policies and customs generally applicable to all EMU patients, even if done in reckless disregard of a generalized risk, did not constitute affirmative conduct sufficient to impose § 1983 liability on [d]efendants under the state-created danger theory." Id. at 926 (citation omitted). Moreover, negligence or inaction are not enough to establish affirmative conduct. *See* Estate of B.I.C. v. Gillen, 710 F.3d 1168, 1173 (10th Cir. 2013) ("Our precedents consistently conclude that mere negligence or inaction is not enough."). Even accepting the averments within the Second Amended Complaint as true, at best, Plaintiff alleges that the School District and ISD Defendants conducted themselves negligently. Thus, Plaintiff has not demonstrated affirmative conduct by the School District or ISD Defendants based upon any policies or customs.

As for DHS Defendants, Plaintiff alleges they had "prior actual notice and/or constructive knowledge" that School District employees allowed A.P. to return home to her abuser, yet "put A.P. at a substantial risk of serious, immediate, and proximate harm" by "recklessly" failing to categorize the report of A.P.'s disclosure in accordance with state law. [Doc. 54, ¶¶ 46, 68-71, 74-75]. "[B]y not initiating a priority one response or taking immediate action after the hotline report of sexual abuse," as

Plaintiff alleges, DHS Defendants increased the risk of harm to A.P. in "conscious disregard" for her safety. [*Id*., ¶ 74]. Even accepting these allegations as true, "merely rendering a person more vulnerable to risk does not create a constitutional duty to protect." Gray, 672 F.3d at 925 (*quoting* Rivera v. Rhode Island, 402 F.3d 27, 42 (1st Cir. 2005)). While the Supreme Court has recognized the "special relationship" exception to this general principle, Plaintiff has not alleged the existence of a special relationship between A.P. and DHS Defendants that could create "an affirmative, constitutional duty to protect." *See* DeShaney, 489 U.S. at 200. His allegations are much more indirect: defendant Brinlee determined the report of A.P.'s disclosure warranted a response within five-days – rather than a same-day response – and defendants Williams and Gray-Alsay subsequently approved Brinlee's determination. Accordingly, Plaintiff has not demonstrated affirmative conduct by DHS Defendants based upon a constitutional duty to protect A.P. from a third party.

The other precondition, private violence, "requires a private act of violence to have caused the victim's harm." Hernandez v. Ridley, 734 F.3d 1254, 1259 (10th Cir. 2013) (citation omitted). "Violence requires '[a]t the very least' some degree of deliberateness on the part of the private actor; negligence is insufficient." Id. (*citing* Gray, 672 F.3d at 928-29); *see also* Uhlrig, 64 F.3d at 573 (holding § 1983 liability will not lie absent "an intent to harm" or "an intent to place a person unreasonably at risk of harm"). In this case, the "danger" in question – a third party's sexual abuse of A.P. – existed prior to any challenged conduct by any moving defendant. Accordingly, no

defendant can be liable under § 1983 for having "created a dangerous environment for A.P." *See* [Doc. 54, ¶ 75].

In his responses to the pending dismissal motions, however, Plaintiff argues the School District and ISD Defendants can be held liable under § 1983 for not "attempt[ing] to prevent [the] danger[]" to A.P. [Doc. 66 at 10], and DHS Defendants can be held liable for increasing A.P.'s vulnerability to known danger. [Doc. 81 at 9; Doc. 91 at 8]. The Second Amended Complaint, however, does not assert that the School District or individual defendants "inten[ded] to place [A.P.] unreasonably at risk of harm." *See* <u>Uhlrig</u>, 64 F.3d at 573. To the contrary, as the individual defendants' actions demonstrated, they intended that the report of A.P.'s disclosure be investigated to determine whether she should be removed from a dangerous situation at home. Even if every individual defendant acted negligently in failing to report Taylor's abuse on the day of A.P.'s disclosure, and even if DHS Defendants acted negligently in mis-categorizing the report of A.P.'s disclosure, the Due Process Clause protects against "deliberately wrongful government decision rather than merely negligent government conduct." <u>Id</u>.

### 2.   **Conscience Shocking Conduct**

Even assuming Plaintiff can meet the preconditions for the danger creation exception, he must also make a showing that the complained-of conduct is conscience shocking. *See* <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1042 (10th Cir. 2006) (noting that a plaintiff's duty to allege actions that shock the conscience applies to the special relationship and danger creation exceptions). To meet this standard, "a plaintiff must

do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." Uhlrig, 64 F.3d at 574 (*see also* Koessel v. Sublette Cnty. Sheriff's Dep't, 717 F.3d 736, 750 (10th Cir. 2013) ("Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard.") (citation omitted). "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Id. This "requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort[.]" Id.

When considering whether conduct is conscience shocking, courts should "bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." Id. at 573 (citations omitted). Whether such conduct shocks the conscience is a question of law for the court. *See* Perez v. Unified Gov't of Wyandotte Cnty., 432 F.3d 1163, 1168 n.4 (10th Cir. 2005); *see also* Moore, 438 F.3d at 1040 ("The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.") (quotation omitted).

Considering Plaintiff's allegations as true, the Court finds the challenged conduct is not conscience shocking in a constitutional sense. To start, Plaintiff has

not demonstrated deliberate conduct intended to injure A.P. on the part of ISD Defendants. The Second Amended Complaint asserts that A.P. took the bus home after disclosing Taylor's sexual abuse to Tompkins. Tompkins then contacted principal Beesley regarding proper reporting procedures. Beesley contacted the school counselor and superintendent Brittain to inquire about the same. In accordance with Brittain's instructions to Beesley, Tompkins reported Taylor's abuse to the ODHS hotline a few hours after A.P.'s disclosure. Although Tompkins' decision to allow A.P. to return home, as well as Brittain and/or Beesley's decision not to report the disclosure to local law enforcement, could be viewed as negligent or perhaps even reckless to the safety of A.P. – these decisions do not "demonstrate a degree of outrageousness and magnitude of potential or actual harm that is truly conscience shocking." Uhlrig, 64 F.3d at 574; *see also* DeAnzona v. Cty. & Cnty. of Denver, 222 F.3d 1229, 1235 (10th Cir. 2000) ("[M]ere negligence does not shock the conscience."); Camuglia v. Cty. of Albuquerque, 448 F.3d 1214, 1222 (10th Cir. 2006) (noting that conscience shocking conduct requires something more than negligent, reckless, or even intentional conduct).

The same is true for Plaintiff's allegations against DHS Defendants. While he is correct that DHS Defendants failed to classify the report of A.P.'s disclosure in accordance with Oklahoma law, the failure to comply with a state law or regulation is not by itself a constitutional violation. *See* Estate of Hocker v. Walsh, No. CIV-92-855-H, 1992 U.S. Dist. LEXIS 21745 at *25, 1993 WL 664646 at *9 (W.D. Okla. 1993), *aff'd*, 22 F.3d 995 (10th Cir. 1994); *see also* DeShaney, 489 U.S. at 202 (the Due

Process Clause "does not transform every tort committed by a state actor into a constitutional violation."). While defendant Brinlee's incorrect categorization of the report in question and its subsequent affirmance by defendants Williams and Gray-Alsay may constitute negligence – these allegations are far from conscience shocking.

Finally, Plaintiff's allegations regarding any alleged policies, customs, or procedures of the School District do not rise to the level of conscience shocking. *See* Green v. Post, 574 F.3d 1294, 1302 (10th Cir. 2009) ("To rise to the level of a constitutional violation, a deliberately indifferent act must be one which is conscience-shocking – the Supreme Court has acknowledged that not every deliberately indifferent action will rise to the 'constitutionally shocking level.'") (quotation omitted). Violations of state law do not, without more, constitute a violation of the federal constitution. *See* Nordlinger, 505 U.S. at 26 (Thomas J., concurring). And failing to follow certain state *and* federal regulations does not, without more, rise above the level of negligence. *See* Ruiz, 299 F.3d at 1184 (finding that state defendants' failure to conduct requisite background and insurance checks based on state and federal statutes and regulations governing childcare licensing did not rise above the level of negligence and therefore did not constitute conscience-shocking conduct). Indeed, "[e]ven knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." DeAnzona, 222 F.3d at 1235.

The Due Process Clause "'is not a guarantee against incorrect or ill-advised [government] decisions,'" Uhlrig, 64 F.3d at 573 (*quoting* Collins, 503 U.S. at 129),

and this Court accordingly finds that the alleged conduct of the School District and individual defendants does not "demonstrate a degree of outrageousness . . . that is truly conscience shocking." Id. at 574. In making this determination, the Court has considered the basic principles set out by the Supreme Court for evaluating substantive due process claims, and in reaching the decision, exercises restraint in defining the scope of such a claim, accounts for concern that § 1983 not replace state tort law and gives deference to local policymaking bodies in making decisions impacting upon public safety. *See* id. at 573. For the foregoing reasons, the Court finds Plaintiff has failed to satisfy the pleadings requirements for § 1983 liability against the School District and individual defendants. ISD Defendants and DHS Defendants are therefore entitled to qualified immunity on Count 2, as Plaintiff has failed to allege any individual defendant violated A.P.'s clearly established substantive due process rights.

## IV.  <u>AMENDMENT OF THE PLEADINGS</u>

FRCP 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." However, a court may deny amendment upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendment, or futility of the amendment. *See* <u>Frank v. U.S. West, Inc</u>., 3 F.3d 1357, 1365 (10th Cir. 1993). In addition, "Rule 7 requires a request for relief to be made by a motion that (1) is in writing, (2) 'states with particularity the grounds for seeking the order,' and (3) specifies the relief sought." <u>Albers v. Bd. of Cnty. Comm'rs of Jefferson City, Colo.</u>, 771 F.3d 697, 706

25

(10th Cir. 2014) (*quoting* FRCP 7(b)). In *Albers*, the Tenth Circuit "recognized the importance of FRCP 7(b) and have held that normally a court need not grant leave to file an amended complaint by formal motion." Id.

Here, the School District and ISD Defendants filed the notice of removal on June 26, 2023. [Doc. 2]. The first round of dismissal motions were filed in early-July, indicating the deficiencies in Plaintiff's complaint and asserting defenses of qualified immunity and sovereign immunity under the GTCA. *See generally* [Doc. 13; Doc. 14; Doc. 24]. This Court invited Plaintiff to amend his complaint on July 14 [Doc. 20], and Plaintiff did so by the July 31 deadline [Doc. 25]. The second round of dismissal motions were filed in early-August, indicating the deficiencies in Plaintiff's first amended complaint and again asserting defenses of qualified immunity and GTCA immunity. *See generally* [Doc. 28; Doc. 31]. On September 29, Plaintiff filed a formal motion for leave to revise his first amended complaint [Doc. 49], of which was granted by this Court on October 4 [Doc. 52].

Plaintiff timely filed his Second Amended Complaint on October 11, 2023, and has since made no further requests – either by formal motion or informally within a responsive motion – for leave to amend. *See* Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, PC., 956 F.3d 1228, 1236 (10th Cir. 2020 ("When a party faces a motion to dismiss and [ ] believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time. Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss."). Despite twice amending his complaint after the

26

individual defendants asserted qualified immunity in this case, the Court finds that Plaintiff has failed to set forth specific factual allegations in his Second Amended Complaint showing "exactly *who* is alleged to have done *what* to *whom*" for purposes of "provid[ing] each individual with fair notice as to the basis of the [federal] claims" against them. *See* Robbins, 518 F.3d at 1249. For the foregoing reasons, Plaintiff is not granted leave by this Court to amend his Second Amended Complaint.

## V.   PLAINTIFF'S STATE LAW CLAIMS

As established herein, the Second Amended Complaint fails to state a federal claim upon which relief can be granted as against the School District, ISD Defendants, and DHS Defendants. Plaintiff's remaining claims arise under state law, which come before the Court only on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011). If a case has been removed from state court and the federal claims are dismissed by the federal court, the latter has discretion to either dismiss the state law claims or remand them to state court. *See* Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Here, based on the authority under 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and finds that remand is preferable to dismissal without prejudice. Accordingly, Plaintiff's remaining state law claims should be remanded to state court.

## VI.  CONCLUSION

ACCORDINGLY, IT IS HEREBY ORDERED that:

1.      The joint partial motion to dismiss [Doc. 57] of the School District and ISD Defendants is **GRANTED** as to the § 1983 claims asserted in Counts 1 and 2 of the Second Amended Complaint.

2.      The joint motion to dismiss [Doc. 79] of defendants Williams and Gray-Alsay is **GRANTED** as to the § 1983 claims asserted in Count 2 of the Second Amended Complaint.

3.      The motion to dismiss [Doc. 88] of defendant Brinlee is **GRANTED** as to the § 1983 claim asserted in Count 2 of the Second Amended Complaint.

4.      The Court declines to exercise supplemental jurisdiction over the remaining state law claims. As Plaintiff's only remaining claims against ODHS and defendant Taylor arise out of state law, ODHS' motion to dismiss [Doc. 56] and Taylor's motion for appointment of counsel [Doc. 74] are **DENIED AS MOOT**.

5.      The Court Clerk is directed to **REMAND** this case to the District Court in and for LeFlore County, Oklahoma for further proceedings on the remaining state law claims.

IT IS SO ORDERED this 28th day of August, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE